No. 612 July 9, 2025 717

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

HC RETAIL, INC.,
an Oregon corporation,
and Rosa Land & Timber, INC.,
an Oregon corporation,
both doing business as Herbal Choices,
*Petitioners,*

*v.*

OREGON LIQUOR AND CANNABIS COMMISSION,
*Respondent.*

Oregon Liquor and Cannabis Commission
A184407

Argued and submitted June 6, 2025.

Kevin J. Jacoby argued the cause for petitioners. Also on the brief was Jacoby Law LLC.

Carson L. Whitehead, Assistant Attorney General, argued the cause for respondent. Also on the brief was Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

TOOKEY, P. J.

Rules requiring a certificate of tax compliance held valid.

**TOOKEY, P. J.**

In this rule challenge under ORS 183.400, petitioners challenge the validity of rules adopted by the Oregon Liquor and Cannabis Commission (OLCC) requiring applicants for marijuana retailer licenses or license renewals to obtain a certificate of tax compliance. An applicant for a license or license renewal must apply to the OLCC "in the form required by the commission by rule," and the application must include "pertinent information required by the commission." ORS 475C.033(1). As set forth in more detail below, we conclude that the agency did not exceed its statutory authority when it adopted rules requiring applicants to obtain a certificate of tax compliance. Those rules fit within its authority to adopt or amend rules that it considers necessary to protect the public health and safety. ORS 475C.017(2)(c). In addition, the OLCC is authorized to refuse to issue a license if an applicant is unable to demonstrate "financial responsibility sufficient to adequately meet the requirements of the premises proposed to be licensed." ORS 475C.037(2). A certificate of tax compliance is pertinent or relevant to that determination. We therefore reject petitioners' challenge and hold the rules requiring a certificate of tax compliance valid.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In early 2023, the Department of Revenue (DOR) determined that "the delinquency rate of the marijuana retail tax that marijuana retailer licensees owe on marijuana sales is 9%. This has resulted in approximately $18.7 million in potential lost revenue for various Oregon programs including cities, counties, and public health and safety programs." In response, Governor Kotek directed the OLCC and the DOR to take steps to require applicants for marijuana retailer licenses to demonstrate proof of tax compliance.

The OLCC adopted or amended rules which are contained in OAR chapter 845, division 25. Under the rules, an applicant for a marijuana retailer license or for a license renewal must include a certificate of tax compliance that has been issued no earlier than 90 days prior to the date of the

application or expiration of the current license. OAR 845-025-1030(3)(g); OAR 845-025-1190(9). In addition, retailers adding new applicants must provide a certificate of tax compliance for each new applicant when there is a change of business structure, OAR 845-025-1165, or a change of ownership, OAR 845-025-1170. A certificate of tax compliance is "a certificate issued by the [DOR] in accordance with OAR 150-305-0304[.]" OAR 845-025-1015(18). Petitioners' challenge concerns the rules requiring a certificate of tax compliance.

A certificate of tax compliance is "an official acknowledgement by the [DOR] that the taxpayer is in compliance with all tax or fee programs administered by the [DOR] to which the taxpayer is subject[.]" OAR 150-305-0304(1). An "applicant" includes "[a]ny individual or legal entity who holds or controls a direct or indirect interest of 20 percent or more in the business proposed to be licensed," or "who is entitled to receive a portion of revenue, proceeds, or profits from the business proposed to be licensed totaling 20 percent or more." OAR 845-025-1045(3)(a) - (b).

For an application to be complete, it must contain the required certificates of tax compliance. OAR 845-025-1030(7); OAR 845-025-1135(1). If the OLCC determines that an application is incomplete, an applicant may seek reconsideration, and the OLCC must provide an opportunity for a hearing. OAR 845-025-1030(8); OAR 845-025-1190(12). A retailer licensee that has submitted a renewal application may be granted additional time to obtain the certificates. OAR 845-025-1190(9)(b). Unless granted an extension, if a retailer licensee fails to provide all certificates of tax compliance, the OLCC "shall consider the renewal application to be incomplete and the license to be expired as of the expiration date listed on the current license certificate." OAR 845-025-1190(9)(c).

## II.   ANALYSIS

In a single assignment of error, petitioners argue that the rules requiring a certificate of tax compliance are invalid because they exceed the statutory authority of the OLCC. For the reasons explained below, we disagree.

A.  *Review Under ORS 183.400*

ORS 183.400 "provides for a limited range of judicial review." *Siletz Anglers Assn. v. ODFW*, 336 Or App 272, 280, 561 P3d 174 (2024) (internal quotation marks omitted). We may declare a rule invalid only in limited circumstances; namely, if the rule:

"(a)   Violates constitutional provisions;

"(b)   Exceeds the statutory authority of the agency; or

"(c)   Was adopted without compliance with applicable rulemaking procedures."

ORS 183.400(4). "[I]n a proceeding under ORS 183.400 to determine whether a challenged rule exceeds an agency's statutory authority, we may consider only the wording of the rule itself (read in context) and the statutory provisions authorizing the rule." *Free Oregon, Inc. v. Oregon Health Authority*, 329 Or App 460, 466, 541 P3d 897 (2023) (internal quotation marks omitted). Based on those sources, we consider whether the agency's adoption of the rule exceeded the authority granted by statute and, further, whether the agency "departed from a legal standard expressed or implied in the particular law being administered, or contravened some other applicable statute." *Id.* (internal quotation marks omitted). In making that determination, we seek to discern the legislature's intent by examining the text and context of the relevant statutes and, if useful to the analysis, legislative history. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (describing statutory analysis).

B.  *The OLCC did not exceed its statutory authority.*

Focusing on the text and context of the relevant statutes, we cannot say that the OLCC exceeded its statutory authority when it adopted rules requiring applicants for marijuana retailer licenses or license renewals to provide a certificate of tax compliance. When Oregon voters adopted Measure 91 in 2014, it was codified in ORS chapter 475C. The "purposes of ORS 475C.005 to 475C.525" include "[t]o establish a comprehensive regulatory framework concerning marijuana under existing state law." ORS 475C.001(1)(d). The OLCC has "the duties, functions and powers

specified in ORS 475C.005 to 475C.525 and 475C.540 to 475C.586 and the powers necessary or proper to enable the commission to carry out the commission's duties, functions and powers under ORS 475C.005 to 475C.525 and 475C.540 to 475C.586." ORS 475C.017(1). Those duties, functions, and powers include the following:

> "(b)   To issue, renew, suspend, revoke or refuse to issue or renew licenses for the production, processing, sale or testing of marijuana items, or other licenses related to the consumption of marijuana items, and to permit, in the commission's discretion, the transfer of a license between persons.

> "(c)   To adopt, amend or repeal rules as necessary to carry out the intent and provisions of ORS475C.005 to 475C.525 and 475C.540 to 475C.586, including rules that the commission considers necessary to protect the public health and safety.

> "(d)   To exercise all powers incidental, convenient or necessary to enable the commission to administer or carry out the provisions of ORS 475C.005 to 475C.525 and 475C.540 to 475C.586 or any other law of this state that charges the commission with a duty, function or power related to marijuana."

ORS 475C.017(2).

ORS 475C.033 addresses applications for a license or renewal license. In that statute, the legislature authorized the OLCC to determine, by rule, what information to require in an application. The statute provides in part:

> "(1) An applicant for a license or renewal of a license issued under ORS 475C.005 to 475C.525 shall apply to the [OLCC] in the form required by the commission by rule, showing the name and address of the applicant, location of the premises that is to be operated under the license and *other pertinent information required by the commission*. The commission may not issue or renew a license until the applicant has complied with the provisions of ORS 475C.005 to 475C.525 and rules adopted under ORS 475C.005 to 475C.525."

ORS 475C.033 (emphasis added). The OLCC shall adopt rules that require a marijuana retailer "to annually renew

a license," and that require retailers "to meet any public health and safety standards and industry best practices established by the commission by rule." ORS 475C.097(3)(a), (f). The OLCC can refuse to issue a license if it makes a finding that the applicant:

"(e)   Is not of good repute and moral character.

"(f)   Does not have a good record of compliance with ORS 475C.005 to 475C.525 or 475C.540 to 475C.586 or any rule adopted under ORS 475C.005 to 475C.525 or 475C.540 to 475C.586.

"(g)   Is not the legitimate owner of the premises proposed to be licensed, or has not disclosed that other persons have ownership interests in the premises proposed to be licensed.

"(h)   Has not demonstrated financial responsibility sufficient to adequately meet the requirements of the premises proposed to be licensed."

ORS 475C.037(2).

The legislature imposed a tax upon the retail sale of marijuana items, which marijuana retailers are required to collect. ORS 475C.674(1); ORS 475C.682(1). The OLCC has authority to revoke a marijuana retailer license if the licensee fails to:

"(A)   Pay the tax as required under ORS 475C.682 twice in any four consecutive quarters and the [DOR] has issued to the licensee a distraint warrant under ORS 475C.688 for the nonpayment of tax; or

"(B)   File a return as required under ORS 475C.682 twice in any four consecutive quarters and the department has issued to the licensee a notice of determination and assessment under ORS 475C.688 for failure to file a return."

ORS 475C.265(6)(a).

In arguing that those statutes do not authorize the OLCC to adopt rules requiring a certificate of tax compliance, petitioners argue that "ORS 475C.005 to 475C.525 and 475C.540 to 475C.586 do not discuss the concept of proactive annual tax compliance, or the need for marijuana retailer

licensees to demonstrate to [the] OLCC that they are compliant with all conceivable tax laws that apply to them." The OLCC responds that it acted within its statutory authority in adopting the challenged rules. We agree with the OLCC.

Pursuant to ORS 475C.017(2), the OLCC has broad authority to adopt rules as necessary to carry out the intent and provisions of ORS 475C.005 to 475C.525. One purpose of those statutes is "[t]o establish a comprehensive regulatory framework concerning marijuana under existing state law." ORS 475C.001(1)(d). As part of that regulatory framework, the legislature authorized the OLCC to "issue, renew, suspend, revoke or refuse to issue or renew licenses for the * * * sale * * * of marijuana." ORS 475C.017(2)(b). The legislature further specified that applicants for licenses must apply to the OLCC "in the form required by the commission by rule," and the applications must include "pertinent information required by the commission." ORS 475C.033(1).

Starting with the text of that statute, "pertinent" means "that has some connection or relation with something (as a matter under discussion)." *Webster's Third New Int'l Dictionary* 1688 (unabridged ed 2002). Because applications must include "pertinent information" as required by the OLCC, that statute allows the OLCC to require a certificate of tax compliance when considering an application for a marijuana retailer license or license renewal. It is "pertinent information" because the OLCC is authorized to adopt or amend rules that it considers necessary to protect the public health and safety. As noted earlier, according to the DOR in 2023, nine percent of licensees were delinquent on paying the marijuana sales tax resulting "in approximately $18.7 million in potential lost revenue for various Oregon programs including cities, counties, and public health and safety programs." Requiring applicants to file a certificate of tax compliance is a legitimate response to that delinquency rate. It is reasonable for the OLCC to infer that tax-compliant applicants will be less likely to be delinquent on their payments of the marijuana sales tax, which in turn is likely to generate additional revenue for programs that protect the public health and safety. Because the OLCC is authorized to determine what information is "pertinent" in an application,

and because the OLCC is allowed to adopt rules that it considers necessary to protect the public health and safety, then the OLCC has statutory authority to require a certificate of tax compliance as part of a license application.[1]

In addition, the OLCC has authority to refuse to issue a license for a number of reasons, including if the applicant "[h]as not demonstrated financial responsibility sufficient to adequately meet the requirements of the premises proposed to be licensed." ORS 475C.037(2)(h). If an applicant is unable to obtain a certificate of tax compliance, then that is pertinent or relevant to whether the applicant can demonstrate financial responsibility. Furthermore, the OLCC is authorized to refuse to issue a license when an applicant does not have "a good record of compliance" with Oregon's marijuana laws or the rules adopted under them. ORS 475C.037(2)(f). It is reasonable for the OLCC to infer that applicants who cannot obtain a certificate of tax compliance may have trouble complying with Oregon's marijuana laws and rules more generally. Therefore, in adopting the new rules requiring a certificate of tax compliance, the OLCC did not exceed its statutory authority.

In arguing otherwise, petitioner points to ORS 475C.265(6)(a), which provides that the OLCC may revoke a license if the licensee fails to pay the marijuana sales tax. Because that statute discusses the marijuana sales tax, petitioner implies that the OLCC has no statutory authority to require compliance with other tax laws. We do not agree. There is no language in ORS 475C.265(6) that prevents the OLCC from requiring a certificate of tax compliance from

---

[1] The OLCC argues that "other pertinent information required by the commission," is a delegative term. We discern no need to further construe the term "pertinent." Whether it is delegative or inexact, we agree with the OLCC that a certificate of tax compliance is pertinent information when considering an application for a license or license renewal. *See generally* Office of Legislative Counsel, *Bill Drafting Manual* 8.12-16 (19th ed 2024) (discussing delegation to state agencies). Petitioners provide no legislative history materials indicating that the relevant statutes should be construed in a way that would prevent the OLCC from requiring tax compliance. *See McClusky v. City of North Bend*, 332 Or App 1, 23 n 5, 549 P3d 557, *rev den*, 372 Or 812 (2024) ("The parties have not pointed us to any pertinent legislative history, and we have not independently sought such legislative history, as it is unnecessary for us to do so in light of the text of [the statute] and its context."); *see also* ORS 174.020(3) ("A court may limit its consideration of legislative history to the information that the parties provide to the court.").

the DOR as part of the application for a license or a license renewal. As already explained, those rules do not exceed the OLCC's statutory authority because the OLCC is authorized to require applicants to provide "pertinent information," which includes information that makes it less likely that licensees will be delinquent of their sales tax payments and that is relevant when assessing an applicant's financial responsibility to meet the requirements of the premises to be licensed.

C. *Other Statutes*

Petitioners argue that the rules are invalid because they conflict with ORS 183.430(1), which is part of the Administrative Procedures Act, and which provides in part that for "any license which must be periodically renewed," if an agency refuses to renew the license, then it "must grant [a] hearing as provided by this chapter." As already noted, if the OLCC determines that a renewal application is incomplete, the applicants may request reconsideration and the OLCC "shall give the applicants the opportunity to be heard." OAR 845-025-1190(12). However, "[a] hearing under this section is not subject to the requirements for contested case proceedings under ORS 183.310 to ORS 183.550." OAR 845-025-1190(12).

Arguably, there is some tension between those rules and ORS 183.430(1), which provides in part that "where the licensee has made timely application for renewal in accordance with the rules of the agency, such license shall not be deemed to expire * * * until the agency concerned has issued a formal order of grant or denial of such renewal." By contrast, under the OLCC rules, "if a retailer licensee fails to provide all certificates of tax compliance as required under this rule within 90 calendar days of the expiration date listed on the current license certificate, the Commission shall consider the renewal application to be incomplete and the license to be expired as of the expiration date listed on the current license certificate." OAR 845-025-1190(9)(c).

However, the legislature specifically authorized the OLCC to "reject any application that is not submitted in the form required by the commission by rule," and, under that

more specific statute, the OLCC "shall give applicants an opportunity to be heard if an application is rejected. A hearing under this section is not subject to the requirements for contested case proceedings under ORS chapter 183." ORS 475C.033(2). Generally, "when one statute deals with a subject in general terms and another deals with the same subject in a more minute and definite way, the two should be read together and harmonized, if possible, while giving effect to a consistent legislative policy." *State v. Edmonds*, 364 Or 410, 421, 435 P3d 752 (2019); *see also* ORS 174.020(2) (codifying the canon that "[w]hen a general provision and a particular provision are inconsistent, the latter is paramount to the former so that a particular intent controls a general intent that is inconsistent with the particular intent"). Here, reading ORS 183.430(1) and ORS 475C.033(2) together, the first statute applies in general to licenses that must be periodically renewed by agencies, but the second one creates a carve out for the licenses discussed in this case that are issued by the OLCC. Given that ORS 475C.033(2) expressly provides that "[a] hearing under this section is not subject to the requirements for contested case proceedings under ORS chapter 183," then the related administrative rule—OAR 845-025-1190(12)—does not exceed the OLCC's statutory authority.[2]

Next, petitioners argue that the rules requiring a certificate of tax compliance conflict with ORS 305.385(4), which provides in part that if the DOR determines that a licensee has "neglected or refused to file any return or to pay any tax," then the DOR may notify the relevant agency that issued the license, and the agency shall "refuse to reissue, renew or extend any license" to that licensee. But there is no provision in ORS 305.385 indicating that a notification of noncompliance from the DOR is *the only way* that the OLCC can refuse to renew a license. Thus, the OLCC's

---

[2] The parties provide no explanation for why the legislature created that carve out for the OLCC. But the only issue before us is whether the OLCC exceeded its statutory authority. *See* ORS 183.400(4)(b). At oral argument, the OLCC indicated that if it rejected an application after a hearing under OAR 845-025-1190(12), then the applicant could seek judicial review of that decision as an order in an other than contested case proceeding. *See* ORS 183.484; *see also Norden v. Water Resources Dept.*, 329 Or 641, 643, 646, 996 P2d 958 (2000) (explaining that orders in contested cases are subject to review by the Court of Appeals, but ORS 183.484 confers jurisdiction for judicial review of orders in other than contested cases on circuit courts).

rules requiring applicants to obtain a certificate of tax compliance do not conflict with that statute.

D.   *Other State Agencies*

In their final argument, petitioners compare the OLCC's rules to those of other state agencies that require certificates of tax compliance. Petitioners point out that the Director of the Oregon State Lottery has authority to select lottery game retailers, and, in doing so, the director shall consider factors including the "financial responsibility" of the retailer. ORS 461.300(2)(a). The legislature required the Oregon State Lottery Commission (OSLC) to "adopt rules specifying the terms and conditions for contracting with lottery game retailers." ORS 461.300(1). Pursuant to that authority, the OSLC adopted a rule providing an application can be denied if it is not "in compliance with all state, federal, or local tax laws." OAR 177-040-0010(1)(e). Similarly, the legislature requires child-caring agencies to provide a tax compliance certificate issued by the DOR to the Department of Human Services. ORS 418.255(3).

Petitioners suggest that the OLCC's statutory authority is more limited because it concerns whether an applicant has failed to demonstrate "financial responsibility *sufficient to adequately meet the requirements of the premises proposed to be licensed.*" ORS 475C.037(2)(h) (emphasis added). However, petitioners provide no support for their claim that that language limits the OLCC to a consideration of whether "the applicant has sufficient resources to operate the proposed licensed premises." On its face, the OLCC's authority to refuse to issue a license under ORS 475C.037(2)(h) when the applicant is unable to demonstrate financial responsibility is quite broad. Even if it is not as broad as the OSLC's statutory authority when it comes to assessing "financial responsibility," when considered in conjunction with the OLCC's authority to require applicants for licenses to provide "pertinent information," it is certainly broad enough to authorize the OLCC to adopt rules requiring applicants to obtain a certificate of tax compliance.

Rules requiring a certificate of tax compliance held valid.