Argued and submitted September 22, 2021, resubmitted January 25; decision of Court of Appeals affirmed, judgment of circuit court reversing "founded" disposition for physical abuse of son reversed but otherwise affirmed June 16, 2022

Bruce QUERBACH,
*Petitioner on Review,*

*v.*

DEPARTMENT OF HUMAN SERVICES,
*Respondent on Review.*

(CC 18CV06040) (CA A170325) (SC S068395)

512 P3d 432

Petitioner sought judicial review of a final order of the Department of Human Services (DHS) that determined that reports to DHS that petitioner had abused two children were "founded," meaning that there was "reasonable cause to believe [that] the abuse [had] occurred." OAR 413-015-1010(2)(a). The circuit court, reviewing the order as an order in other than a contested case, assumed that the "reasonable cause to believe" standard in that rule is a "probable cause" standard. After holding a trial to develop the record for review, the circuit court concluded that only two of DHS's four "founded" determinations could be sustained. On petitioner's appeal and DHS's cross-appeal, the Court of Appeals rejected the circuit court's application of a "probable cause" standard and concluded that not just two, but three of DHS's "founded" determinations must be sustained. Petitioner sought review, arguing that "probable cause" is the correct standard for determining that a report of abuse is founded and that, applying that standard, none of DHS's "founded" determinations were sustainable. Petitioner also argued that the circuit court's "findings" that the DHS investigation and analysis was biased and otherwise flawed were binding on review and that, as a result, all of the "founded" determinations that resulted from that investigation and analysis must be set aside. *Held*: (1) To hold that DHS's "founded determinations" are not supported by substantial evidence, an appellate court must conclude that the record developed in the circuit court would not permit a reasonable person to find that there is a reasonable basis for believing that the reported abuse had occurred; (2) while evidence in the record suggesting that information that DHS relied on in making its determination was unreliable or false should be considered on appellate review, the circuit court's statements that DHS's investigation and decision-making process were flawed in certain respects were not relevant to the issue on review; and (3) the three "founded" determinations that petitioner challenged on review were supported by substantial evidence.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court reversing the "founded" disposition for physical abuse of son is reversed but is otherwise affirmed.

On review from the Court of Appeals.*

_____

* Appeal from Washington County Circuit Court, Theodore E. Sims, Judge. 308 Or App 131, 480 P3d 1030 (2020).

Margaret H. Leek Leiberan, Jensen & Leiberan, Beaverton, argued the cause and filed the briefs for petitioner on review.

Inge D. Wells, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Walters, Chief Justice, and Balmer, Flynn, Duncan, Nelson, Garrett, and DeHoog, Justices.**

BALMER, J.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court reversing the "founded" disposition for physical abuse of son is reversed but is otherwise affirmed.

_____

** Nakamoto, J., retired December 31, 2021, and did not participate in the decision of this case.

**BALMER, J.**

In this judicial review proceeding, petitioner sought to overturn a final order of the Department of Human Services (DHS) that determined that reports to DHS that petitioner had abused two children were "founded," meaning that there was "reasonable cause to believe [that] the abuse [had] occurred."[1] OAR 413-015-1010(2)(a). The circuit court, reviewing the order as an order in other than a contested case, assumed that the "reasonable cause to believe" standard in that rule is a "probable cause" standard. After holding a trial to develop the record for review, as required by *Norden v. Water Resources Dept.*, 329 Or 641, 648-49, 996 P2d 958 (2000), the circuit court concluded that only two of DHS's four "founded" determinations could be sustained under that standard. On petitioner's appeal and DHS's cross-appeal, the Court of Appeals rejected the circuit court's application of a "probable cause" standard and, instead employing the "reasonable suspicion" standard that it had used in an earlier, similar case, concluded that not just two, but three of DHS's "founded" determinations must be sustained.[2]

Before this court, petitioner argues that "probable cause" is the correct standard for determining that a report of abuse is founded and that none of DHS's "founded" determinations hold up when the record on review is considered under that standard. Petitioner also argues that, given that the circuit court found that the DHS investigation and analysis into the reported abuse was incomplete and flawed in various respects, the "founded" determinations must be set aside. As explained below, we reject those arguments and affirm the Court of Appeals' conclusion that three of the four "founded" dispositions were supported by substantial evidence.

---

[1] Although the "founded" determination did not cause DHS to take any protective action with respect to the children, it has been included in a central registry of child abuse investigations that DHS is required to maintain. *See* ORS 419B.030(1) (requiring DHS to establish and maintain central state registry of reports of child abuse that have been investigated and determined to be founded).

[2] For consistency, we cite the current versions of administrative rules and statutes unless otherwise indicated.

## I.  LEGAL BACKGROUND

We begin by explaining the purpose of and process for determining that a report of child abuse is "founded." ORS chapter 419B contains a group of statutes that seek to ensure that DHS is able to identify children who are affected by abuse or neglect and potentially in need of its services. One statute, ORS 419B.007, announces a legislative policy of requiring "mandatory reports and investigations of abuse of children" in order to "facilitat[e] the use of protective social services to prevent further abuse" and "safeguard and enhance the welfare of abused children." In keeping with that policy, the statutes impose a duty on certain persons—designated "public and private officials"—to make a report to DHS if they have "reasonable cause to believe that any child with whom [they] come[] in contact has suffered abuse." ORS 419B.010(1). DHS is required to "[c]ause an investigation to be made" when it receives a report of child abuse, ORS 419B.020(1)(a), and the statutes specify how and by whom the required investigation shall be carried out, ORS 419B.021; ORS 419B.023. Finally, and of particular relevance here, the statutes mandate that any such investigation into a report of child abuse conclude with one of three findings: that the report of abuse is "founded," "unfounded," or "cannot be determined." ORS 419B.026(1)(a)‑(c).

DHS has defined the terms "founded," "unfounded," and "unable to determine" in its administrative rules. A "founded" determination means that "there is reasonable cause to believe [that] the abuse occurred," OAR 413-015-1010(2)(a)—the same standard that, under ORS 419B.010, triggers a mandatory reporter's duty to make a report to DHS. An "unfounded" determination means that "there is no evidence [that] the abuse occurred," OAR 413-015-1010(2)(b), and an "unable to determine" disposition means that "there is some indication [that] the abuse occurred, but there is insufficient evidence to conclude that there is reasonable cause to believe [that] the abuse occurred," OAR 413-015-1010(2)(c). "Reasonable cause," for purposes of those rules, has the same meaning as it does in ORS 419B.150(1)(b): "a subjectively and objectively reasonable belief, given all

of the circumstances and based on specific and articulable facts." OAR 413-015-0115(58).

When DHS determines that an allegation of child abuse is "founded," it must assess the risk of further abuse and the child's need for services and provide protective services as necessary. ORS 409.185(2)(b). That might include taking the child into protective custody and petitioning the juvenile court to determine that the child is under its jurisdiction. ORS 419B.150; ORS 419B.100(1)(c). But regardless of whether DHS concludes that further action is necessary, any report of child abuse that it determines is "founded" must be included in a central state registry that DHS is required to maintain. ORS 419B.030(1). Once a "founded" determination is included in the registry, it is part of the history of the child and the family that DHS must consider in any later child abuse assessment. OAR 413-015-0415 (1)(a)(B), (b). But the "founded" determination itself, and its appearance in the registry, has no independent legal significance in criminal, juvenile dependency, domestic relations, or other proceedings.

When DHS determines that a report of abuse is "founded," it must notify the person identified in the report as the "perpetrator"[3] of the person's right to seek administrative review of that disposition and to submit information and documents that the person wishes to have considered in that review. OAR 413-010-0720(5), (8). If, after performing the requested review, DHS adheres to its original "founded" determination, that determination is a final order and may be challenged in court by the alleged perpetrator as an order "in other than [a] contested case."

An order "in other than [a] contested case[]" is reviewed, as provided in ORS 183.484(1), on a petition for judicial review directed to the Marion County Circuit Court or the circuit court for the county in which the petitioner resides. Review is limited to certain specified claims, one of which is a claim that the order is "not supported by substantial evidence in the record." ORS 183.484(5)(c). When a circuit

---

[3] A "perpetrator" under the DHS rules "means the person [that DHS] has reasonable cause to believe is responsible for child abuse in a founded [Child Protective Service] disposition." OAR 413-010-0000(44).

court reviews an agency's final order in other than a contested case under ORS 183.484(5)(c), the relevant record includes a record developed by the parties in a trial-like proceeding in the circuit court. The circuit court's review is *not* limited to the evidence that was before the agency when it issued its order. *Norden*, 329 Or at 648-49. That arrangement—allowing the parties to develop the record for review in the circuit court—fills a gap that would otherwise put parties adversely affected by orders in other than contested cases at a disadvantage; instead, it provides them with an opportunity to place evidence in the record that responds to or supplements the evidence in the record before the agency that was basis for the agency's decision. *Id.* at 647-48.

But the fact that the record for substantial evidence review under ORS 183.484(5)(c) is developed in the circuit court—and may, as in this case, contain evidence that was not before the agency when it made its decision—does not mean that the circuit court's role is to determine, *ab initio*, whether a report of abuse is founded. Rather, as in other cases of judicial review of agency decisions, the court's role is to decide whether the agency's determination is supported by substantial evidence in the expanded record. As we said in *Norden*, "The court's evaluation of the record is limited to whether the evidence would permit a reasonable person to make the determination the agency made in a particular case." 329 Or at 649.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

In the present case, DHS received a report that petitioner may have abused two of his children ("son" and "daughter"). The DHS caseworker who was assigned to the case interviewed the two children, their mother, petitioner, and various other persons, and referred the children to Child Abuse Response and Evaluation Service (CARES) for evaluation. Based on the CARES evaluation, the interviews, DHS's records of its previous interactions with the family, and other materials, the caseworker determined that four allegations of "abuse" by petitioner were "founded": an allegation that petitioner had physically abused son; an allegation that petitioner had caused a "threat" of physical harm to daughter; and allegations that petitioner had caused

"mental injury" to both son and daughter.[4] DHS informed petitioner by letter of those determinations and of his right to seek administrative review.

Petitioner submitted a timely request for administrative review along with materials that he believed contradicted the "founded" determinations. DHS performed the requested review and upheld all four of the original "founded" determinations, informing petitioner of its decision in a letter that it designated as its final order. Petitioner then sought judicial review of that order as an "order in other than [a] contested case," as provided in ORS 183.484. He filed a petition for judicial review in the circuit court for the county in which he resided, ORS 183.484(1), challenging the order on one of the allowable grounds—that DHS's "founded" determinations were "not supported by substantial evidence in the record." ORS 183.484(5)(c).[5]

The circuit court held an evidentiary hearing to create the record that it would examine for substantial evidence.

_____

[4] As relevant here, ORS 419B.005(1)(a) defines "abuse" to include:

"(A) Any assault, as defined in ORS chapter 163, of a child and any physical injury to a child which has been caused by other than accidental means, including any injury which appears to be at variance with the explanation given of the injury.

"(B) Any mental injury to a child, which shall include only observable and substantial impairment of the child's mental or psychological ability to function caused by cruelty to the child, with due regard to the culture of the child.

"* * * * *

"(G) Threatened harm to a child, which means subjecting a child to a substantial risk of harm to the child's health or welfare."

[5] Petitioner's initial petition for judicial review also challenged the order under ORS 183.484(5)(b), based on allegations that, "in its decision-making process, DHS * * * failed to consider exculpatory evidence" and "[g]ave inappropriate weight and consideration to prior involvement of the agency with * * * [p]etitioner, where such involvement resulted in 'unfounded' determinations." Those allegations may have been directed to ORS 183.484(5)(b)(B), which provides for remand of an order in other than a contested case that is "inconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency"—although petitioner did not identify a particular DHS rule, practice, or officially stated position that was violated. In any event, petitioner's claim under ORS 183.484(5)(b) appears to no longer be part of the case. The trial court's decision and petitioner's arguments to the Court of Appeals and this court are directed only at petitioner's claim that DHS's founded determinations are "not supported by substantial evidence in the record." ORS 183.484(5)(c).

DHS submitted material that it had gathered while investigating and evaluating the abuse reports—including the material that petitioner had submitted—and also presented the testimony of several employees who were involved in making or reviewing the "founded" determinations. Petitioner testified on his own behalf and also presented the testimony of his then-current wife and a babysitter, who had witnessed the incident that resulted in the abuse report; a psychologist who had evaluated petitioner and determined that he was unlikely to intentionally or maliciously hurt his children; and a forensic psychologist who suggested that CARES and DHS had not followed the best practices for evaluating accusations of child abuse, including the practice of examining and rejecting all alternative hypotheses about such an accusation before concluding that the accusation is true. In addition to presenting evidence, the parties argued about the standard of proof needed to support a "founded" determination, with petitioner arguing for a "probable cause" standard and DHS arguing for a standard that is more akin to "reasonable suspicion." After the hearing, the circuit court issued a letter opinion that held, first, that a "founded" determination must be supported "to a probable cause standard." The opinion then announced the court's determination that the record supported DHS's "founded" determinations as to mental injury caused to both son and daughter but did not support the "founded" determinations as to physical abuse of son and threat of physical abuse to daughter. Finally, the opinion included what appear to be findings regarding DHS's investigation of the report of physical abuse of son by petitioner, including a finding that DHS's caseworker had "analyzed interactions of petitioner with his children through a lens of assumed prior uncontrolled behavior, taking as undisputed fact that petitioner had such a history." In response to DHS's request for further explanation, the court issued a second letter opinion that contained additional statements about flaws in DHS's assessment process.

Petitioner appealed, assigning error to the circuit court's determinations that two of DHS's "founded" dispositions, *i.e.*, those pertaining to mental injury, were supported by substantial evidence. DHS cross-appealed, assigning

error to the circuit court's conclusions that (1) DHS must use a probable cause standard to determine that a report of abuse is founded; and (2) DHS's "founded" determinations with respect to petitioner's physical abuse of son and threat of harm to daughter were not supported by substantial evidence in the record.

In its decision on the appeal and cross-appeal, the Court of Appeals first addressed its own role on review, noting that the issue before it was the same issue that was before the circuit court, *i.e.*,

> "whether substantial evidence in the record created before the circuit court supports the founded dispositions that DHS made in the final order on review. *** 'Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding.'"

*Querbach v. Dept. of Human Services*, 308 Or App 131, 134-35, 480 P3d 1030 (2020) (quoting ORS 183.484(5)(c)). Turning to the question of what evidentiary standard DHS was required to apply when determining whether a report of abuse is "founded," the court noted that, under DHS's rules, "'[f]ounded' *** means [that] there is reasonable cause to believe the abuse occurred." *Id.* at 135 (citing OAR 413-015-1010(2)(a)). The court observed that, in an earlier case, *A. F. v. Oregon Dept. of Human Services*, 251 Or App 576, 284 P3d 1189 (2012), it had explained that, in the context of those rules, "reasonable cause" is "akin to the 'reasonable suspicion' standard of criminal law" and simply evaluates whether it is reasonable to suspect that a child "is at risk of harm from abuse or neglect by a particular individual." *Querbach,* 308 Or App at 135-36 (quoting *A. F.*, 251 Or App at 584). Adhering to that earlier holding, the Court of Appeals announced that, in reviewing DHS's "founded" dispositions under ORS 183.484(5)(c) for substantial evidence, the question before it was

> "whether the whole record generated in the circuit court allows for the determination that it was reasonable for DHS to believe 'under the circumstances before it' that petitioner caused both his children to suffer mental injury, physically abused his son, and threatened harm to his daughter."

308 Or App at 136 (quoting *A. F.*, 251 Or App at 584). Finally, after noting that a detailed recitation of the evidence in the record would be of little benefit, the court announced its conclusions: That the evidence in the record would support a reasonable suspicion that petitioner had physically abused son and caused mental injury to both son and daughter, but that it would not support a reasonable suspicion that petitioner's conduct had placed daughter under threat of physical harm. *Id.* at 136-37. The court thus affirmed on petitioner's appeal and reversed in part on DHS's cross-appeal.

## III.  ANALYSIS

Petitioner now seeks review by this court, arguing that the Court of Appeals erred in various respects.

### A.  *Legal Standards*

We first consider petitioner's arguments regarding the legal rules that apply when reviewing a DHS "founded" determination under ORS 183.484(5)(c).

#### 1.  *The "Reasonable Cause to Believe" Standard*

Petitioner contends that the Court of Appeals erred in concluding that DHS is required to use a "reasonable cause" or "reasonable suspicion" standard—rather than the higher probable cause standard used by the trial court—in determining whether a report of child abuse is founded. Petitioner's primary argument is that, while a "reasonableness" standard may be appropriate when the issue is whether potential abuse should be *reported* and, thus, investigated by DHS, it is too lax a standard to use for determining, after an investigation, that a report of abuse is founded, given that such a determination will negatively affect the purported perpetrator of the abuse in various ways. Petitioner also argues that, insofar as DHS rules pertaining to investigation and assessment of child abuse reports provide that "the standard for determining C[hild] P[rotective] S[ervice] assessment dispositions is *reasonable cause* to believe," OAR 413-015-1010(1) (emphasis added), and separately define "reasonable cause" and "reasonable suspicion," OAR 413-015-0115(58), (59), "reasonable suspicion" necessarily is something different from "reasonable cause" and cannot be

the standard for determining "founded," "unfounded," and "unable to determine" dispositions. Petitioner then insists, without any substantive analysis of the DHS rules, that "reasonable cause to believe" in OAR 413-015-1010(1) and related rules is equivalent to "probable cause."

Petitioner's first argument is that a "reasonableness" standard—whether of "cause to believe" or "suspicion" that abuse occurred—is necessarily too lax for a determination of this sort. But that argument invokes policy concerns rather than legal principles. No statute, rule, or constitutional provision that petitioner cites or of which we are aware would preclude DHS from using such a standard to determine, for its own internal purposes, whether to designate a report made to it by a person or entity outside the agency as "founded" or "unfounded." Neither does such a standard seem inappropriate, given the legislative policy implicit in the statutory scheme discussed above. On the contrary, using a relatively low standard to trigger DHS's obligations relating to reporting, investigation, and record-keeping of potential instances of child abuse is consistent with the legislature's stated purpose in enacting those statutes—to "facilitat[e] the use of protective social services to *** safeguard and enhance the welfare of abused children." ORS 419B.007.

To the extent that petitioner is arguing that the legislature could not have intended that DHS use anything less than a "probable cause" standard because of the serious consequences of such a determination to the person believed responsible for the alleged abuse, we are not persuaded. Although a "founded" determination may be admissible as evidence in a later proceeding, standing alone it has no independent legal significance affecting the person's rights. *See Dept. of Human Services v. A. B.,* 362 Or 412, 423, 412 P3d 1169 (2018) ("founded" determination "may be factor in further legal proceedings or determinations" but does not "require[] a particular adverse decision or trigger[] an automatic prohibition"). And, while petitioner suggests that a "founded" determination, and the consequent appearance of that determination in DHS's registry, may ultimately affect him in other ways (by, for example, preventing him from

adopting or fostering a child or volunteering in a school or child-oriented setting), it does not appear that any of those impacts are likely to occur, given that a "founded" determination would not be publicly available, OAR 413-015-0485, would not necessarily make an alleged perpetrator of abuse ineligible to adopt or foster a child, OAR 413-200-0274(1)(L)(D)(i), and, in general, would not be required for volunteer background checks, *see, e.g.*, OAR 581-021-0512 (requiring only criminal records checks for school volunteers).

However, petitioner's second argument—which focuses on the fact that DHS's child welfare rules separately define "reasonable cause" and "reasonable suspicion"—raises a valid logical point that calls into question the Court of Appeals' assumption that "reasonable cause to believe," as used in OAR 413-015-1010(1), is equivalent to "reasonable suspicion" as that term is used in criminal law. As noted above, the DHS rules define "reasonable cause"—using the statutory definition of the term in ORS 419B.150(1)(b)—as "a subjectively and objectively reasonable belief, given all of the circumstances and based on specific and articulable facts." OAR 413-015-0115(58). But the DHS rules define "reasonable suspicion" differently:

> "'Reasonable suspicion' means a reasonable belief given all of the circumstances, based upon specific and describable facts, that the suspicious physical injury may be the result of *abuse*. Explanation: The belief must be subjectively and objectively reasonable. *In other words, the person subjectively believes that the injury may be the result of abuse, and the belief is objectively reasonable considering all of the circumstances.* The circumstances that may give rise to a reasonable belief may include, but not be limited to, observations, interviews, experience, and training. The fact that there are possible non-*abuse* explanations for the injury does not negate reasonable suspicion."

OAR 413-015-0115(59) (emphases added). The first sentence of that definition is similar, although not identical to, the definition of "reasonable cause" and is not necessarily tied closely to the criminal law standard. The third, emphasized sentence describes the standard in the same way that the criminal law standard is described in our cases—that is, as

requiring the relevant decision-maker to have a *subjective* belief in the specified fact and that that belief be objectively reasonable considering all the circumstances. *See, e.g.*, *State v. Belt*, 325 Or 6, 10-11, 932 P2d 1177 (1997) (reasonable suspicion requires that "the officer subjectively believe that the person stopped has committed a crime" and that "the officer's subjective belief be objectively 'reasonable under the totality of the circumstances'") (quoting *State v. Valdez*, 277 Or 621, 625-29, 561 P2d 1006 (1977)).

Perhaps a more straightforward basis for questioning the Court of Appeals' assumption that the two standards are equivalent is the wording of the terms themselves. The term "reasonable suspicion" appears to assume an *actual* suspicion, while the formulation used in the applicable rule, OAR 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(2)(a)—"there is reasonable cause to believe"—does not focus on the actual belief of any particular person, but on the reasonableness of the conclusion, based on all the circumstances.

The Court of Appeals did not explain why the "reasonable cause to believe" standard in the DHS rules should be treated as equivalent to the "reasonable suspicion" standard of the criminal law. Its justification for doing so is that it had done so before—in *A.F.*, 251 Or App 576, an opinion that, on that point, relies on a somewhat conclusory assertion to the same effect in an earlier Court of Appeals opinion, *Berger v. State Office for Services to Children and Families*, 195 Or App 587, 590, 98 P3d 1127 (2004). And DHS does not mount a defense of the suggested equivalence. In response to petitioner's point, it argues primarily that "reasonable cause to believe" is a "lower" standard than the "probable cause" standard that the trial court applied. Thus, we have been offered no persuasive reason for assuming that the "reasonable cause to believe" standard that determines whether an abuse report is "founded" is equivalent to the "reasonable suspicion" standard used in criminal law, and we see aspects of the phrase as it is used in this context that suggest that the two standards are *not* equivalent. Petitioner makes a plausible argument that there is reason to doubt the applicability of the "reasonable suspicion" standard that the Court of Appeals applied.

But we need not—and do not—resolve that question in this case. The central issue litigated below and before this court is one that petitioner's argument does not confront: whether the Court of Appeals nevertheless was correct to reject the circuit court's application of a "probable cause" standard to DHS's determinations and to instead conclude that "the role of the reviewing court is simply to determine whether a reasonable person could reach the determination that DHS made." *Querbach*, 308 Or App at 136. To address that issue, we begin with the standard that DHS has assigned, by rule, to the determination that a report of abuse is "founded": "reasonable cause to believe." OAR 413-015-1010(1), (2)(a). "Reasonable cause to believe," on its face and as a textual matter, differs from "probable cause to believe." The latter term refers to an array of evidence that would support a belief that it is *probable*—that is, more likely than not—that the specified factual circumstance exists,[6] while the former suggests a less compelling array of evidence that would merely make such a belief *reasonable*.

DHS has defined "reasonable cause," by rule, in a way that is consistent with that lower standard: "'Reasonable cause' as defined in ORS 419B.150 means a subjectively and objectively reasonable belief, given all of the circumstances and based on specific and articulable facts." OAR 413-015-0115(58).[7] The relevant point here is that that definition, like the phrase it purports to define, appears to require only reasonableness, not probability.

If the definition of "reasonable cause" in OAR 413-015-0115(58) is read into OAR 413-015-1010 as the standard for determining that a report of child abuse is "founded,"

---

[6] *See, e.g.*, *State v. Anspach*, 298 Or 375, 380-81, 692 P2d 602 (1984) (probable cause requirement for issuance of a search warrant means that the facts upon which the warrant is premised would lead a reasonable person to believe that seizable things will *probably* be found in the location to be searched); ORS 131.005(11) (defining "probable cause" as meaning that "there is a substantial objective basis for believing that *more likely than not* an offense has been committed and a person to be arrested has committed it") (emphasis added).

[7] DHS adopted OAR 413-015-0115(58), the rule defining "reasonable cause," in 2020—after the circuit court reversed DHS's final order in part, and a few months before the Court of Appeals affirmed in part, and reversed in part, the circuit court's decision. Petitioner has not argued, for that reason or any other reason, that the rule is irrelevant in this review.

it may or may not include a requirement that the DHS decision-makers have an actual, *subjective* belief that the abuse occurred. But that interpretative question is not before us. Petitioner has never suggested that the DHS decision-makers here did not actually or subjectively believe that the reports of abuse that they determined were founded.

We return to the crux of the dispute between petitioner and DHS: whether the "reasonable cause" standard requires something akin to "probable cause," as petitioner contends. As discussed at length above, there is no mention of "probability" in any relevant statutory or regulatory definition, and the only standards that are set out there are the familiar standards of subjective and objective "reasonableness." Accordingly, whether or not the Court of Appeals was wrong to hold that DHS is to use the "reasonable suspicion" standard of criminal law as a proxy for "reasonable cause to believe" when determining whether reports of child abuse are founded, as petitioner argues, we conclude that it was correct when it rejected the trial court's use of a "probable cause" standard and held that the relatively lower "reasonable cause" standard set out in the rule applies.

2. *"Under the Circumstances Before It"*

Petitioner observes that the Court of Appeals framed the "substantial evidence" issue that was before it in terms of whether "the whole record generated in the circuit court allows for a determination that it was reasonable for DHS to believe 'under the circumstances before it'" that the reported abuse had occurred. *Querbach*, 308 Or App at 136 (quoting *A. F.*, 251 Or App at 584). Petitioner maintains that that framing effectively undermines a principle established in *Norden*—that substantial evidence review of an order "in other than [a] contested case" is not limited to the evidence *before the agency* at the time it made its decision but is directed at the record developed in the circuit court. *See Norden*, 329 Or at 647-49.

It is not entirely clear what the Court of Appeals meant when it used the phrase "under the circumstances before it." Particularly when considered in light of other statements in the Court of Appeals opinion, the phrase

might suggest an intention to look only at the evidence that was before DHS at the time of its "founded" determinations when assessing whether those determinations were supported by substantial evidence in the record. If that was what the Court of Appeals intended, the notion may have arisen out of reference to the "reasonable suspicion" standard. As we have explained, however, there is no clear indication that "reasonable cause," as defined in DHS's rules, is similarly focused on the decision-maker's actual beliefs at the time of his or her decision. In any event, *Norden* makes clear that judicial review of an order in other than a contested case, whether by the circuit court or an appellate court, is based on the entire record as developed in the circuit court and is conducted applying the substantial evidence standard. If the Court of Appeals *did* erroneously consider only the evidence that was before DHS at the time that it made its "founded" determinations, then that error did not cause that court to reach any different conclusion about the ultimate issue in this case than we reach when properly considering the entire record developed in the circuit court.

### 3. *Role of Factual Findings by the Circuit Court*

Petitioner argues that this court and the Court of Appeals are "bound" by certain "factual findings" made by the circuit court—that DHS was "inappropriately biased" against him and "used faulty methods in its evaluation"—because there is evidence in the record that supports those findings. Petitioner contends that the Court of Appeals erred in "ignoring" those findings and insists that, if it had given proper deference to the findings, it would have been compelled to reverse DHS's "founded" determinations.

That argument assumes that the principle of deference to a circuit court's factual findings—a feature of some other aspects of appellate review of circuit court decisions—is applicable in an appeal from a circuit court's decision on judicial review of an agency's final order in other than a contested case under ORS 183.484, when the petitioner argues that the agency's order is not supported by substantial evidence in the record. The present case does not require a definitive answer regarding the validity of that assumption. That is so because neither the statements that the circuit

court identified as its "findings" nor petitioner's sometimes inaccurate characterization of those statements are the kind of factual findings that could affect whether there is substantial evidence to support DHS's "founded" determinations here.

In addition to holding that the evidence must support DHS's "founded" determinations to a probable cause standard and applying that standard to conclude that the record did not support two of DHS's four determinations, the circuit court's initial letter opinion included a statement that petitioner describes as a "finding" that is binding on review. That statement began with an assertion that "DHS [had] analyzed the interactions of petitioner with his children through a lens of assumed prior uncontrolled conduct, taking as undisputed fact that petitioner had such a history" and then went on to assert that certain specified shortcomings in DHS's analysis of the evidence might have resulted from that questionable assumption. In a second letter opinion, the circuit court set out certain "clarifications and additions" that petitioner also appears to regard as findings: that the initial DHS decision-maker was aware of a certain exculpatory fact but "completely disregarded that in making her evaluation," that "DHS's assessment process was flawed in adopting the CARES report conclusions at their face value," and that DHS's "refusal" to interview certain witnesses suggested by petitioner was not "objective and impartial." Petitioner suggests that those statements amount to or include a factual finding that DHS was "biased" against him. But the trial court made no finding that DHS was "biased" against petitioner, and none of the trial court's statements, alone or in combination, constitute a finding of general bias, although they restate evidence that was admitted in the circuit court proceeding and thus became part of the record for judicial review. Petitioner also characterizes those statements as constituting a factual finding by the trial court that DHS had "used faulty methods in its evaluation"—although the statements appear to mix facts, legal conclusions, and opinions. Indeed, petitioner's characterization of the trial court as "finding" that DHS was "biased" against him is inconsistent, at least in part, with the court's decision upholding two of the four "founded" determinations.

The accuracy of petitioner's characterizations aside, none of the trial court's actual findings would affect the substantial evidence analysis on review, even if we were to treat them as binding. The asserted facts—that DHS made an inappropriate assumption about petitioner's history, was unaware of or disregarded certain facts during its investigation, and used flawed methods to evaluate the evidence—do not affect the contents of the record that was made in the circuit court. When a court reviews an agency determination under ORS 183.484(5), the only issue is whether substantial evidence in the record "viewed as a whole" supports the agency's determinations, and, as discussed, that standard is based on whether that record "would permit a reasonable person to make that finding." ORS 183.484(5)(c).

Here, during the circuit court proceedings, petitioner was able to place factual evidence in the record that would counter the adverse effects of what he viewed as "flaws" in DHS's evaluation. Petitioner presented evidence that disputed that he had a history of prior uncontrolled behavior; he presented testimony from witnesses whom he had recommended to DHS and DHS had not interviewed; and he presented evidence about the proper way to evaluate a child's accusation of abuse—all of which evidence can be and presumably was considered by the trial court and by the Court of Appeals in determining whether DHS's "founded" determinations were supported by substantial evidence.

Our conclusion does not mean that record evidence indicating significant flaws in DHS's analysis does not have a role in a substantial evidence review. While the substantial evidence standard of ORS 183.484(5)(c) is not a particularly stringent standard of review when, as here, it is applied to a determination by DHS that there is "reasonable cause to believe" that abuse has occurred, a person in petitioner's position challenging such a determination might be able to present evidence to the circuit court that so thoroughly undermines the evidence that *supports* the determination that the record as a whole would not permit a reasonable person to conclude that DHS had reasonable cause to believe that the reported abuse had occurred. But evidence of flaws in DHS's analysis that falls short of doing so (as does the

evidence that petitioner offered in the circuit court) is insufficient to permit reversal of the agency's order under ORS 183.484(5)(c).

### 4. *Summary: The Standard for Reviewing DHS's "Founded" Orders*

As discussed above, DHS's final order is an order in other than a contested case, and judicial review of the "founded" determinations in the order therefore is for "substantial evidence in the record." Under that standard, the issue is whether the record developed in the circuit court, when viewed as a whole, would permit a reasonable person to make the determinations that the agency did here. *See Norden*, 329 Or at 649 (stating that standard). Also as discussed, the "founded" determinations are not determinations that petitioner *in fact* abused the children in the ways that were alleged, but rather that DHS had "reasonable cause to believe" that he had done so—meaning that, given the evidence in the record, an objectively and subjectively reasonable person could believe that petitioner had abused the two children in the ways alleged. Accordingly, to hold that DHS's "founded" determinations are not supported by substantial evidence, ORS 183.484(5)(c), as petitioner claims, this court would have to conclude that the record developed in the circuit court would not permit a reasonable person to find that there is a reasonable basis for believing that the reported abuse had occurred. Evidence in the record suggesting that the information that DHS relied on in making its determination was unreliable or false (or for other reasons should be accorded minimal or no weight) should be considered as part of that analysis. But the trial court's comments that DHS's investigation and decision-making process were flawed in certain respects are not relevant to the issue on review, and even if we were to treat them as "factual findings," they would not alter the conclusion that we reach here.

### B. *Application to DHS's "Founded" Determinations*

As described above, DHS determined that four allegations of child abuse were "founded"—that petitioner had caused a "threat of harm" to daughter, had "physically abused" son, and had caused "mental injury" to both

children. The Court of Appeals concluded that the latter three "founded" determinations were supported by substantial evidence in the record and that the first—pertaining to "threat of harm" to daughter—was not. DHS has not challenged the Court of Appeals decision as to the "threat of harm" determination. Therefore, we need only consider the determinations that petitioner challenges—that the reports that petitioner had physically abused son and caused mental injury to both son and daughter were "founded." For each of those three determinations, we ask whether the record developed in the circuit court would permit a reasonable person to find that there is a reasonable basis for believing that the alleged abuse had occurred.

Like the Court of Appeals, we believe that there is little to be gained from setting out a detailed description of the evidence. Suffice it to say that, although the record contains evidence that could support a different disposition with respect to each of the allegations of abuse under review, we cannot say that the record as a whole would *not* permit a reasonable person to determine, as DHS did, that the allegations were "founded"—that is, that there was reasonable cause to believe them to be true.[8] Accordingly, we reject petitioner's contention that the "founded" determinations were not supported by substantial evidence.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court reversing the "founded" disposition for physical abuse of son is reversed but is otherwise affirmed.

---

[8] Our consideration of the record takes into account petitioner's evidence that raises questions about the reliability, fairness, and comparative relevance of the evidence that DHS relied on. That evidence is insufficient to preclude a reasonable determination that the allegations are "founded."